UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY ROGERS, on behalf of herself and all others similarly situated, | ) ) | CASE NO. 5:11-CV-01103 |
| | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS' OPPOSITION TO** |
| v. | ) | **PLAINTIFFS' MOTION FOR LEAVE** |
| | ) | **TO CONDUCT ESI DISCOVERY** |
| PALLADIUM CARE INC. d/b/a/ | ) | |
| HOMEWATCH CAREGIVERS et al., | ) | |
| | ) | |
| Defendants. | ) | |

## I.     INTRODUCTION

During the March 12, 2014 telephone status conference, Plaintiff Shirley Rogers' ("Plaintiff" or "Ms. Rogers") counsel abandoned her prior accusation that that Defendants Palladium Care Inc. d/b/a Homewatch Caregivers ("Palladium") and Paul Bonacuse ("Mr. Bonacuse") (collectively, the "Defendants") and their counsel were hiding "missing" timesheets, and instead stated that she would like to conduct electronic discovery to confirm that Defendants have produced all electronic "payroll records."[1]   According to Plaintiff's counsel, before she can calculate her clients' claimed damages, she needs to review "*the payroll records, the actual pay stubs, breakdown of what [the plaintiffs] were paid and their hours so that [she] can see what they were paid on a weekly basis*." *Id*. at 14 (emphasis added).  And when the Court questioned whether the documents Plaintiff's counsel was seeking would be discovered in an electronic search, she again clarified that she sought the payroll records, and not the timesheets:

---

[1] *See* Transcript of March 12, 2014 status conference, attached as **Exhibit A**, at 13.

> The Court:  Well, Counsel, as I understand you . . . , the records you're seeking were not electronic.  The records you're seeking were, in essence, time sheets that were signed and prepared in paper form by your clients, so ESI is not an issue.  The issue is whether or not, in fact, these documents exist and whether -- or whether they're required to maintain them and we've already touched on those issues.

> Ms. Groedel:  No, Your Honor, that's incorrect.  I'm not saying that those would be electronic.  ***What would be electronic is their payroll records, not the time sheets that they've submitted every week***.

*Id.* at 13-14.  The Court then granted Plaintiff until March 19, 2014 to move for this additional discovery. *Id.* at 15-16.

On March 20, 2014, Plaintiff filed her *Motion for Leave to Conduct ESI Discovery*. [Doc. No. 101].  Interestingly, Plaintiff's Motion makes little mention of the electronic payroll records she so insistently sought during the March 12, 2014 status conference.  Instead, she dedicates most of her Motion to rehashing old arguments related to the "missing" handwritten timesheets, which, as the Court aptly noted during the status conference, would not be found in electronic form.  Specifically, Plaintiff continues on her tired quest to convince the Court that Defendants and their counsel have intentionally withheld and/or failed to maintain certain timesheets "because they are severely adverse to Defendants' statements to the Court and to [the plaintiffs], and because they directly contradict Defendants' claims that [the plaintiffs] are only owed approximately $13,000 in unpaid overtime wages." Doc. No. 101 at 4.[2]  In fact, Plaintiff's Motion is built using *Plaintiffs' Motion for Sanctions* [Doc. No. 77] and *Plaintiffs' Opposition to*

---

[2] Defendants have already responded in detail to Ms. Rogers' baseless accusations that Defendants and their counsel intentionally concealed *any* relevant information or documents, and hereby incorporate by reference *Defendants' Reply Brief in Support of Renewed Motion for Sanctions and Response to Plaintiffs' Motion for Sanctions* [Doc. No. 79].

6421276.1

*Defendants' Renewed Motion for Sanctions* [Doc. No. 78] (both filed in August 2013), much of it by verbatim recycling.[3]

To be clear, each of the issues raised in Plaintiff's Motion have been fully briefed by both parties and ruled upon by the Court. *See* Doc. Nos. 60, 65, 66, 76, 77, 78, 79, 81; *see also* March 13, 2014 Order [Doc. No. 97] (denying both parties' motions for sanctions). Thus, the issues raised in Plaintiff's Motion are not only outside the scope of her original request for electronic discovery, but they are also moot. And while a motion to strike may be an appropriate choice,[4] Defendants instead will respond to the web of inaccuracies and innuendo on which Plaintiff bases her latest motion.

## II.     LAW & ARGUMENT

At their essence, Plaintiff's arguments fall into two categories: (1) Palladium did not maintain the records required by federal law; and (2) Defendants did not produce records sufficient for Plaintiff to calculate her claimed damages. Neither is supported by the law nor substantiated by fact. These arguments are instead Plaintiff's continued attempt to deflect attention away from the shortcomings in her case, which have caused Defendants to spend an exorbitant amount of time and resources defending a case that, on its best day, is worth just over $12,000, and delaying any recovery to the individuals involved.

### A.      Defendants have fully complied with their record-keeping obligations.

Plaintiff starts her Motion by accusing Defendants of "spoil[ing]" evidence and violating their "legally mandated document retention requirements." Doc. No. 101 at 3. These accusations, however, are completely without support, and call into question whether Plaintiff

---

[3] Plaintiff's Motion even includes a lengthy discussion of why her class claims should be saved from dismissal, which, of course, is not an issue at this juncture. *See* Doc. No. 101 at 20-23.
[4] *See* OHIO R. CIV. P. 12(f) (the court may strike from pleadings any "redundant, immaterial, [or] impertinent" matter").

6421276.1

took even a cursory look at the documents Defendants provided in discovery before asserting these claims.

### 1. The FLSA does not require that time and payroll records be kept in any particular form.

Plaintiff repeatedly argues to this Court that the individual, handwritten timesheets are the "*only true, legitimate, and accurate records*" of the hours each plaintiff worked, and that Defendants violated their obligations under §§ 211(c) and 215(a)(5) of the Fair Labor Standards Act ("FLSA" or the "Act"), and applicable regulations, by not maintaining the "missing" timesheets. *See* Doc. No. 101 at 3, 19-20 (emphasis added). Her arguments are not supported by the law.

Section 211(c) of the Act requires covered employers to "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them]." 29 U.S.C. § 211(c).[5]  The Act does not however, require that records be kept in any particular form, only that they include certain information. 29 CFR § 516.1(a); *see also Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 461 (S.D.N.Y 2011) ("[N]o particular form or order of recordkeeping is mandated by the statute or regulations.") (citation omitted). Employers are required, for instance, to maintain records of their employees' start and stop times; the total hours worked each day and each week; the basis on which the employees' wages are paid; the total overtime earned for the week; and the total wages paid each pay period. 29 CFR § 516.6(a). All of this information can be found in Palladium's records.[6]

---

[5] Section 215(a)(5) further prohibits employers from violating § 211(c), and from making any "statement, report, or record filed or kept [under this section] . . . knowing such statement, report, or record [is] false in a material respect." 29 U.S.C. § 215(a)(5).

[6] Palladium did not pay overtime until November 29, 2011; these records, thus, do not show any overtime.

6421276.1

The Payroll Detail Reports clearly identify the caregiver's name; client's name and number; type of shift; check-in time; check-out time; total hours worked; rate of pay; and total amount earned.[7]  The amounts actually paid to each caregiver were kept as well.[8]  The payroll records Defendants produced are not "summaries" created by Palladium, but are instead documents created by Palladium's payroll providers.  These records show the payments made to each plaintiff *during the entire class period*.[9]  While not "paystubs," the FLSA does not require Palladium to provide its employees paystubs, let alone maintain copies of them, when the pay information is maintained in another form.

Palladium's records also comply with the Department of Labor's declaration that employers can use "any timekeeping method they choose," provided the method is "complete and accurate."  *See* Recordkeeping Requirements under the Fair Labor Standard Act, Wage and Hour Division Fact Sheet No. 21 (Rev. July 2008).[10]  So, the timesheets submitted by the plaintiffs are not, as Plaintiff claims, the "only true" accounting of the hours each plaintiff worked, and Palladium was not required to maintain them.  Plaintiff cannot ignore Palladim's records just because she doesn't like what they say.

---

[7] Attached as **Exhibit B** is an example Payroll Detail Report [PAL 0433, 0441] that was recorded and kept by Palladium and that show the hours Ms. Rogers worked between Monday, December 27, 2010 and Sunday, January 2, 2011.  The names of the clients have been redacted for privacy purposes, leaving a first name, last initial and client number.  The copy produced to Plaintiff includes the full name.  Palladium submitted this Payroll Detail Report to its payroll provider, which then prepared the check Palladium provided Ms. Rogers.  *See* Bonacuse Aff. at ¶ 12.  The affidavit of Paul Bonacuse ("Bonacuse Aff."), which was initially submitted in support of Defendants' Reply Brief in Support of Renewed Motion for Sanctions and Response to Plaintiffs' Motion for Sanctions [Doc. No. 79], is attached as **Exhibit C**.

[8] Attached as **Exhibit D** is an example Payroll Register [PAL 0081] showing that Palladium paid Ms. Rogers $282.76 (after applicable tax withholdings) for the hours she worked between December 27, 2010 and January 2, 2011.

[9] Notably, these payroll records contain all of the information Plaintiff sought at the March 12, 2014 status conference – *i.e.*, "[a] breakdown of what [the plaintiffs] were paid and their hours so that [she] can see what they were paid on a weekly basis" – which further undermines her request for additional electronic discovery.  *See* Exhibit A at 14.

[10] This Fact Sheet is attached as **Exhibit E**.

Plaintiff also states that Defendants violated the statute by "failing to identify on any time record and/or on any payroll record what the Plaintiffs' hourly rate of pay is," and alleges, without any support, that Defendants "have apparently done this so that Plaintiffs are unable to determine if they are being correctly compensated for the hours they work." Doc. No. 101 at 4 (emphasis in original). This, too, is incorrect.

Defendants have, on numerous occasions, explained to Plaintiff that a caregiver's hourly rate depends on the length of his or her shift, and the type of care provided.[11] And just prior to the July 11, 2013 status conference, while the parties met privately in the Court's chambers, Mr. Bonacuse again explained Palladium's rate schedule. One of the opt-in class members, Graciella Castellanos-Overstreet, was present during the meeting. She was in complete agreement with Mr. Bonacuse, and stated that she understood her hourly rates.[12] The timesheets Ms. Castellanos-Overstreet submitted to Palladium, and which Defendants have produced in this case, further indicate that she understood her rate of pay varied. In tracking her hours for Tuesday, November 9, 2010, for instance, Ms. Castellanos-Overstreet notes that she earned $8.75/hour for her first shift and $10/hour for her second.[13]

Moreover, a review of Ms. Rogers' Payroll Detail Report from the December 27, 2010 to January 2, 2011 week [Exhibit B] shows under "Hours," the number worked and under "Rates," the rate of pay, either for the full shift or per hour, and then the total dollar value of that line. The "Total Hours" and "Total Amount" are also shown, allowing Plaintiff's counsel to determine an average or blended rate for the week. But based on her letters to defense counsel, and the

---

[11] *See* letters dated July 3, 2013 and July 9, 2013, attached as **Exhibit F** and **Exhibit G**, respectively; *see also* Bonacuse Aff. at ¶¶ 14-15.
[12] Palladium's rate schedule is explained to each caregiver during his or her orientation process. Bonacuse Aff. at ¶ 16.
[13] *See* Ms. Castellanos-Overstreet's timesheet for the weeks of 11/8/2010 to 11/21/2010, attached as **Exhibit H**.

accusations leveled therein and continued in the instant Motion, one wonders if Plaintiff's counsel even consulted with her clients about these records.

A cursory examination of the documents attacked shows that, for each week during the class period, Palladium made, kept, and preserved all required records and, thus, Plaintiff's accusations that Palladium somehow violated its FLSA record-keeping requirements is without merit.

> **2.  Plaintiff has not shown that Palladium's records are in any way inaccurate or inadequate, or that Defendants have spoiled any evidence.**

In her Motion, Plaintiff argues that the Court ignore Palladium's records and use instead a flat 100 hours per week worked by Plaintiffs. *See* Doc. No. 101 at 17, 20. This highlights Plaintiff's motivation underlying her desperate attempts to void the detailed records provided by Defendants, but her attempt must fail. She has not produced any evidence that Palladium's records are inaccurate or inadequate. To the contrary, Palladium's records fully comport with the FLSA's record-keeping requirements,[14] and they provide all of the information Plaintiff needs to prove her "under-compensation damages." *O'Brien v. Ed Donnelly Enterps*, 575 F.3d 567, 602 (6th Cir. 2009). Under these circumstances, it is not appropriate to substitute Plaintiff's phone records, affidavit, or any other estimation for the records created and kept by the employer.

Nor is it appropriate to sanction Defendants with a spoliation instruction. *See* Doc. No. 101 at 3. The Sixth Circuit defines "spoliation" as "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Manns*, 277 F. App'x 551, 558 (6th Cir. 2008); *see also Yoder v. Frey Auctioneers, Inc. v.*

---

[14] The question is not whether these records meet Plaintiff's standards or are a best practice. The controlling standard is set by the FLSA.

6421276.1

*EquipmentFacts, LLC*, No. 3:10-CV-1590, 2013 U.S. Dist. LEXIS 69734 (N.D. Ohio May 16, 2013) ("Spoliation is the culpable destruction of relevant evidence where there is a duty to preserve it. . . .  The Court must find some specific piece of evidence that the plaintiffs should have preserved but actually destroyed.").  While Plaintiff would undoubtedly welcome such an instruction, her hollow allegations regarding the "missing" timesheets do not meet the standard to show spoliation.

**B.      Defendants have fully complied with their discovery obligations.**

In further support of her Motion, Plaintiff states, incorrectly, that the documents Defendants produced are "incomprehensible," and that "[i]t appears . . . that Defendants have failed to maintain *any* records of the number of hours worked by Plaintiffs – at least they have failed to produce any thus far."  Doc. No. 101 at 5, 19 (emphasis added).  This claim is more than hyperbole; it is either extraordinarily careless or a willful inaccuracy.  As set forth below, Defendants have worked to provide Plaintiff with the relevant information and documents, in full compliance with the discovery rules, and Plaintiff has the tools available to adequately compute the damages allegedly owed.

**1.      The overtime claims at issue in this lawsuit are limited to weeks in which the plaintiffs worked more than 40 hours, including time in a non-private home, between August 22, 2010 and February 22, 2013.**

In her Amended Complaint, Plaintiff specifically limits the class to caregivers who worked in non-private homes:

> All former and current caregivers who worked for Defendants in ***non-private homes***, including nursing care facilities and/or assisted living facilities at Lorantffy Care Center, The Suites at Grande Village, and/or Chambrel at Montrose, who were not paid one and one half their regular rate for all hours worked in excess of forty (40) per workweek at any time immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice.

6421276.1

(Amend. Compl. at ¶ 27) (emphasis added).  During the February 28, 2013 status conference, the parties further narrowed the claims at issue in this case, agreeing that the class period would be two and a half years from the February 22, 2013 opt-in deadline.[15]  And while Plaintiff's counsel later tried to expand the class period to three years, the Court made clear that it is two and a half years:

> Mr. Drozdowski:  Your honor, can I be clear on the record also in terms of the documents?  It's the time records for 16 opt-ins, 15 plus Ms. Rogers for the two-and-a-half-year period that we agreed to, correct?
>
> The Court:  That's correct.  Counsel?
>
> Ms. Groedel:  I think we get three years so that you can decide the intentionality.
>
> Mr. Drozdowski:   Your Honor, she agreed at the February conference that we were talking about two and a half years.  I don't think it makes any sense to move back to a three-year considering everything that's happened between February and today [June 5, 2013].
>
> The Court:  ***Two and a half will be the court's order***.[16]

Thus, to the extent that Plaintiff is entitled to any time or payroll records, the time period is limited to August 22, 2010 to February 22, 2013 for herself and the other 15 plaintiffs who have opted-in.

---

[15] *See* Transcript of February 26, 2013 status conference, attached as **Exhibit I**, at 4-5; *see also* January 8, 2013 Order [Doc. No. 46] (setting opt-in deadline of February 22, 2013).

[16] *See* Transcript of June 5, 2013 status conference, attached at **Exhibit J**, at 47-48 (emphasis added).

9

2. **Defendants timely served their objections and responses to Plaintiff's discovery requests and produced detailed time and payroll records showing the number of hours each plaintiff worked during the class period and the amount he or she was paid.**

On April 22, 2013, consistent with the Federal Rules of Civil Procedure and the Court's February 27, 2013 Order [Doc. No. 49], Defendants timely served their objections and responses to Plaintiff's discovery requests.[17]   A disc containing production documents was sent to Plaintiff's counsel's office by Federal Express on April 22, 2013.  Included in this production were Payroll Detail Reports [PAL 0229-0905] for each of the sixteen plaintiffs for each hour worked between August 22, 2010 and December 4, 2011[18] – when Defendants reclassified those caregivers who work in assisted living facilities, independent living facilities, or skilled nursing facilities (as opposed to private homes) as "non-exempt" employees eligible for overtime compensation.[19]  Defendants also produced payroll records spanning the entire class period [PAL 0001-0226].   The Payroll Detail Reports are created based on each caregiver's check-in and check-out calls placed from the client's location.   These records are then reconciled by reviewing the individual's timesheets, whether handwritten, e-mailed, texted, or otherwise.  *See Bonacuse*

---

[17] Defendants' Responses and Objections to Plaintiffs' Second Set of Interrogatories, Requests for Production of Documents, and Requests for Admission are attached as **Exhibit K**. Defendants objected to most of Ms. Rogers' discovery requests in that they were overly broad, unduly burdensome, and/or sought information outside of the class period. *See* Defendants' Answers to Interrogatory Nos. 2-9, 11, 13; Responses to Request for Production Nos. 1, 3-5, 7-10.

[18] The produced records were for a shorter period for those individuals who began working after August 22, 2010 or who left before December 4, 2011.

[19] It is undisputed that Defendants began paying overtime on November 29, 2011. *See* Exhibit K at Defendants' Answer to Interrogatory No. 3 ("[U]ntil late November 2011, upon advice of Defendants' franchisor, Defendants classified each of its caregivers as "exempt" from federal and state overtime requirements. On or around November 29, 2011, upon the advice of counsel, Defendants reclassified those caregivers who work in assisted living facilities, independent living facilities, or skilled nursing facilities, as opposed to private homes, as "non-exempt" employees entitled to overtime compensation."). Defendants disclosed this change in pay practice during the June 4, 2012 mediation conference. Defense counsel also reminded Plaintiff's counsel in his July 9, 2013 letter [Exhibit G]. No contrary claims, documents, or other evidence have been advanced since then.

6421276.1

Aff. at ¶¶ 11-12.[20]  These result in the pays to employees documents in the payroll records, which were also produced.

> ### 3. The Court reopened discovery on June 5, 2013 for the limited purpose of allowing Defendants to produce all hand-written timesheets in their possession.

During the June 5, 2013 status conference, Plaintiff's counsel argued for Defendants to produce individual timesheets.  She first raised this issue with Defendants on May 15, 2013, two weeks after the deadline for concluding all discovery disputes had passed.[21]  At that time, Defendants explained that Plaintiff had waived her right to further discovery because she failed to object to Defendants' document production as deficient within the court-ordered deadline. Indeed, she had not even bothered to open the disc, much less look at any of the documents, until May 10, 2013.

The Court admonished Plaintiff's counsel for her failure to raise this issue before the discovery cut-off:

> The Court:  [T]here has been a failure on your part to adequately seek discovery and do things in a timely fashion . . . , [a]nd I am asking myself why it is now beyond the date I set for resolving all of these issues of May 1, why it is now once again here in mid-June I am hearing about discovery issues well beyond the date that I put in place.[22]

---

[20] Defendants also produced a detailed spreadsheet created as part of this case in order to compute the arguable overtime premium that may be due [PAL 0227-0228].  In creating the spreadsheet, Defendants noted each week that any of the named plaintiffs worked in excess of 40 hours per week in a non-private home, identify the client in the non-private home, and, using his or her hourly rate for that particular job, calculated the amount of overtime arguably due.  While Plaintiff claims in her Motion that Defendants used the "missing" timesheets to create their spreadsheet, and that the timesheets must then exist, Plaintiff is wrong. *See* Doc. No. 101 at 15.  Defendants never said they created the spreadsheet using the timesheets; instead, they have consistently maintained that they based their spreadsheet on their own records, which have been produced.

[21] *See* February 27, 2013 Order [Doc. No. 49] ("The deadline for concluding discovery, including settling all discovery disputes, is May 1, 2013.").  On May 10, 2013, nine days after the close of discovery, and just three days before the next scheduled status conference, Plaintiff's counsel's secretary informed defense counsel that the disc Defendants provided on April 22, 2013 was "corrupt," and that she was unable to view the documents.  Defense counsel immediately sent a messenger to Plaintiff's counsel's office with a replacement disc.

[22] Indeed, in waiting until after the discovery cut-off had expired to review the Defendants' document production, Plaintiff violated not only the Court's February 26, 2013 Order, but also violated Local Rule 37.1, which provides

6421276.1

Exhibit J at 9-10.  Nonetheless, in light of counsel's promise that the case could be resolved "in short order" if Defendants produced all available timesheets, the Court reopened discovery for this limited purpose:

> The Court: Now, here's what I am going to do.  I am going to order you to produce those records.  How long will it take?
>
> Mr. Drozdowski:  Two weeks, Your Honor.
>
> The Court:  Two weeks.  Keep track of your time, the costs that cost you to produce those records, the copying, the cost of staff, the cost of attorney review.  I will decide later whether or not that the plaintiff's counsel should be responsible for that sum of money.  You produce those records so the other side has them. Against my better judgment, I know it's outside the deadline, I know it's past my deadline.  I know she didn't call it to my attention, but in fundamental fairness, you will produce them. . . .

*Id*. at 45.[23]

### 4.    Defendants produced the timesheets they found for the relevant time period.

During the March 12, 2014 status conference, Plaintiff's counsel asserted, again incorrectly, that "Defendants have only produced the documents -- *it is very coincidental that the only documents they claim that they have of the time sheets submitted are those that we have produced*.  Those are the only ones and that just simply isn't believable."  Exhibit A at 13 (emphasis added).  What is not believable is the implication of malfeasance she apparently was making.

On June 18, 2013, consistent with the Court's June 6, 2013 Order, Defendants produced 812 pages of individual timesheets – all of the timesheets that it found in its possession for the

---

that "[n]o discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off."
[23] *See also* June 6, 2013 Order [Doc. No. 63].

time period between August 22, 2010 and February 22, 2013. *See* Doc. No. 78 at 4.[24]   These

included timesheets, e-mails, and notes for each of the opt-in class members, except for Patricia

Haywood, who was not employed by Defendants during the class period.[25]   Three weeks after

Defendants produced their timesheets, on July 1, 2013, Plaintiff produced 174 pages of

documents, "which represent all of the documents [she] ha[d] received from [the plaintiffs'] thus

far."[26]  Included in these documents were time and payroll information for Ms. Rogers, Richard

Wall, Shaina Whye, and Sylvia Payne, many of which relate to hours worked before August 22,

2010, the beginning of the class period.[27]   Plaintiff did not produce *any* documents relating to

the other eleven plaintiffs who worked during the class period.  Thus, notwithstanding Plaintiff's

counsel's baseless assertions to the contrary, Defendants did not limit their June 18, 2013

production to those timesheets that Plaintiff produced.

Plaintiff's counsel also claimed during the March 12, 2014 status conference that "the

fact that people texted in and called in, it's absolutely false as the plaintiffs will testify to."

Exhibit A at 13.  But the documents produced by both parties clearly show that the plaintiffs

provided their hours to Palladium in varying formats, and were not wed to the rule that they

produce signed handwritten timesheets.[28]   During the June 5, 2013 status conference, moreover,

---

[24] Defense counsel met with Mr. Bonacuse after the March 12, 2014 status conference and reviewed Palladium's files concerning the named plaintiffs for additional timesheets.  Defendants are, contemporaneously herewith, producing the six additional timesheets they located during that review.  This includes one timesheet for Janet Varrecchia, four for Kathy Jeric, and one for Graciella Castellanos-Overstreet.

[25] Defendants' counsel explained this point to Plaintiff's counsel in his June 18, 2013 letter enclosing the documents, which is attached as **Exhibit L**.

[26] *See* July 1, 2013 letter from Plaintiff's counsel to Defendants' counsel, attached as **Exhibit M**. As Defendants' counsel explained in his July 3, 2013 letter to Plaintiff's counsel [Exhibit G], Plaintiff did not produce these documents until two months *after* the discovery cut-off and, thus, is precluded from introducing them as evidence in this case.

[27] Attached as **Exhibit N** is the composite Plaintiff produced [P66] concluding that no overtime is owed to Mr. Wall based on the hours he worked during the class period.  The timesheets support the Payroll Detail Reports, and conclusively prove that during no week did Mr. Wall work the hours necessary (more than 40 hours) to qualify for overtime compensation.

[28] Attached as **Exhibit O** are examples of the varying formats that Ms. Castellanos-Overstreet used to record and submit her hours.

13

Shaina Whye and Sylvia Payne both stated that they submitted their hours to Palladium via e-mail. *See* Exhibit J at 22-23. In fact, because caregivers so routinely strayed from Palladium's policy requiring handwritten timesheets, signed by each client, Palladium, in January 2013, issued a written notice to all caregivers stating that "[w]e will no longer be accepting texts or typed e-mails."[29]

> **5.** **Plaintiff does not allege that any timesheets are "missing" for her, Georgia Bonner, and Member Williams, and yet she has made no effort to compute the amounts owed to these plaintiffs, or to demonstrate how Defendants' computation is inaccurate**.

In her Motion, Plaintiff argues that it is impossible to establish her damages because certain timesheets have not been produced. Doc. No. 101 at 13. But according to the list her counsel provided Defendants' counsel on July 1, 2013,[30] Plaintiff *does* have complete timesheets for herself, Ms. Bonner, and Ms. Williams, and she is "missing" only one or two timesheets for Linda Hough, Jody LaFollette, and Richard Wall. Yet, as her counsel admitted during the July 11, 2013 status conference, she has made no effort to calculate the amount she believes these plaintiffs are owed.

> The Court: Did you take the time sheets you received and attempt to compute the damages the plaintiffs may have incurred based on the time sheets that you received?
>
> Ms. Groedel: We don't have --
>
> The Court: Just using what you received, did you attempt to compute what you believe your clients' damages may be based on the information that was provided to you? . . . *So, very succinct question: Did you provide the defendants with specific time calculations that you represented you would be able to do upon receipt of the time sheets? Yes or no?*

---

[29] The signed acknowledgments of Ms. Barkley, Ms. Jeric, and Ms. Castellanos-Overstreet are attached as **Exhibit P**, **Exhibit Q**, and **Exhibit R**, respectively.

[30] *See* July 1, 2013 letter from Plaintiff's counsel to Defendants' counsel, attached as **Exhibit S**.

6421276.1

Ms. Groedel:  *No*.  Can I -- may I explain?[31]

It is readily apparent from this admission that the problem is not the "missing" timesheets or that Defendants' records are "incomprehensible."  The problem is that Plaintiff has not even tried to interpret them.

At the start of this lawsuit, Defendants took these same records, and calculated the amount of overtime arguably due to each plaintiff.  Using the first week she performed work for Palladium as an example, Ms. Rogers worked a total of 41 hours for a total pay of $315.00.  The Payroll Detail Report indicates that, on December 30, 2010, Ms. Rogers worked a 12-hour shift for a payment of $90.00, equal to a rate of $7.50 per hour.  On December 31, 2010, she worked a total of 2 hours as a "personal care aide," earning $9.00 an hour.  That same day, she worked a 12-hour shift for a payment of $90.00, or $7.50 per hour.  On January 2, 2011, she again worked two separate shifts: 2 hours as a "personal care aide" at $9.00 per hour, and a 12-hour shift for a payment of $90.00, or $7.50 per hour.[32]  Having already been paid her regular rate of pay for each hour worked, Ms. Rogers would be entitled to an unpaid overtime premium of $3.84 per hour.  And because she only worked one hour of overtime that week, the total amount owed for that week is $3.84.

---

[31] Transcript of July 11, 2013 Status Conference, attached as **Exhibit T**, at 7-8 (emphasis added).
[32] Ms. Rogers handwritten timesheets [PAL 2174-75], attached as **Exhibit U**, list precisely the same hours for this week.  The corresponding Payroll Register [Exhibit D], moreover, confirms that Ms. Rogers was paid a gross amount of $315.00 for that week.

| Week Beginning | Weekly Hours Worked With Pay Rate(s) | Overtime Premium Rate (weekly hours × rate 1) + (weekly hours × rate 2) ÷ (total hours) × (½) | Overtime Hours Total - 40 | Total Overtime Premium Overtime Premium Rate × Overtime Hours |
|---|---|---|---|---|
| 12/27/2010 | 36 hours @ $7.50/hour 5 hours @ $9.00/hour | ($270.00) + ($45.00) ÷ ($315.00 ÷ 41) × (½) $3.84 | 1 hour | $3.84 × 1 $3.84 |

Defendants performed this same computation for each week that any of the named plaintiffs worked in excess of 40 hours (including any time in a non-private home), and concluded that the total overtime owed is $12,149.04.

To date, Plaintiff has not identified *a single inaccuracy* that might support her contention that the "missing" timesheets "directly contradict" Defendants' damages computation, or that they are "adverse" to Defendants' position. *See* Doc. No. 101 at 4, 12 n. 5. Instead, she has elected to dig in her heels, renege on the promises she made in open court that she would provide a demand "in short order," ignore the orders of the Court, and further delay resolution of this case. Simply put, no matter how many documents Defendants provide, Plaintiff is simply unwilling to move forward toward a resolution.

### 6.       Defendants did not "forget" to propound discovery.

In yet another attempt to deflect blame, Plaintiff states, incorrectly, that Defendant did not propound any discovery because they "forgot" to do so. Doc. No. 101 at 18. The issue in this case is whether plaintiffs are owed any overtime compensation for a week in which they worked more than 40 hours (including time in a non-private home), and if so, how much? *See*

6421276.1

*id.* at 2.  The second part is readily answered from Palladium's records,[33] which Defendants produced in discovery, and explained, in painstaking detail, to Plaintiff's counsel.  But given the relatively small amount at issue, $12,149.04, Defendants elected not to expend the time and effort obtaining unnecessary discovery from Plaintiffs, and instead approached the case with an eye toward settlement.  Indeed, Defendants initiated settlement discussions with Plaintiff shortly after the initial Case Management Conference.  If Plaintiff approached this case in the same cost-effective manner, then considerable judicial and party resources would have been spared.  *See Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) ("Just because a plaintiff has an FLSA violation in her pocket does not give her a license to go to trial, run up the attorney fees and then recover them from defendant.").

## III.    CONCLUSION

Not only have Defendants produced thousands of pages of detailed time and payroll records, but they have worked to answer each of Plaintiff's counsel's questions, provide detailed examples, and even provide additional documentation where feasible.  Yet, despite having all of the tools available to do so, Plaintiff has still made no effort to calculate her claimed damages.  And by asserting that Defendants and their counsel have intentionally withheld the documents she needs to prosecute this case, Plaintiff either misunderstands the factual and legal underpinnings of her claims, or she is willfully misrepresenting them.  For the foregoing reasons, and those set forth in Defendants' Reply Brief in Support of Renewed Motion for Sanctions and Response to Plaintiffs' Motion for Sanctions [Doc. No. 79], Defendants respectfully request that

---

[33] Clients were provided care in non-private homes – *i.e.*, facilities. Thus, any care of those clients during a week in which the caregiver exceeded 40 hours would trigger the overtime premium.  Conversely, any week in which services were provided only in private homes would not trigger an overtime premium, no matter how many hours the caregiver worked.

6421276.1

the Court issue an order denying Plaintiff's Motion for Leave to Conduct ESI Discovery in its entirety.

Respectfully submitted,

/s/ Richard T. Prasse

OF COUNSEL:

HAHN LOESER & PARKS LLP

Richard T. Prasse (0024819)
Amanda L. McHenry (0089146)
200 Public Square, Suite 2800
Cleveland, Ohio  44114
Telephone:  (216) 621-0150
Fax:  (216) 241-2824
Email: rtprasse@hahnlaw.com
          amchenry@hahnlaw.com

*Attorneys for Defendants*

6421276.1

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Leave to Conduct ESI Discovery was electronically filed this 26th day of March, 2014.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Caryn M. Groedel
Caryn Groedel & Associates Co., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
cgroedel@groedel-law.com

*Attorneys for Plaintiff*

/s/ Richard T. Prasse
One of the Attorneys for Defendants

6421276.1